Keith & Amelia **GROSE**

v.

The **PROCTER & GAMBLE PAPER PRODUCTS,** Michelle Andre, Ryan Collins.

**Appeal of: Keith Grose.**

Superior Court of Pennsylvania.

Argued April 14, 2004.
Filed Jan. 6, 2005.

Keith & Amelia Grose, appellants, Pro Se.

John J. Myers, Pittsburgh, for appellees.

BEFORE: BENDER, McCAFFERY, and TAMILIA, JJ.

OPINION BY McCAFFERY, J.:

¶ 1 Appellant, Keith Grose, asks us to determine whether the trial court properly sustained preliminary objections in the nature of a demurrer and dismissed his *pro*

*se* amended complaint seeking damages for constructive discharge and civil conspiracy. For the reasons set forth below, we hold that Appellant's amended complaint fails to adequately state a claim for relief. Accordingly, we affirm.

¶ 2 The relevant facts [1] and procedural history underlying this appeal are as follows. In early 1998, Appellant had been an employee of Appellee Procter & Gamble Paper Products ("P & G") in their Mehoopany, Pennsylvania plant for approximately twenty-nine (29) years when he applied for and was awarded the position of Finished Product Controller Coordinator. (Amended Complaint filed April 2, 2003, at ¶¶ 5, 16–17). The job posting described the position as an "in depth loop" assignment estimated to last eighteen (18) to thirty-six (36) months, at which time the individual in the position would rotate back to a "core work" assignment. (*Id.*, P & G Loop Assignment Posting Exhibit; R.R. at 3).[2] In less than one year, Appellant made numerous improvements and his work was praised in an email sent by Appellee Michelle Andre ("Andre"), a Mehoopany plant warehouse manager, on December 4, 1998. (*Id.* at ¶¶ 3, 18–19 and Email Exhibit; R.R. at 33). Nevertheless, on December 14, 1998, Appellant was told by Appellee Ryan Collins ("Collins"), also a Mehoopany plant warehouse manager, that "he no longer had this job" and that P & G had given the position to another employee. (*Id.* at ¶¶ 4, 20–21). Over the next few days, Appellant met with Andre and Collins as well as P & G Employee Relations managers to discuss the situation. (*Id.* at ¶¶ 22–24). Appellant was not reinstated to his position as Finished Product Controller Coordinator and Appellees Andre and Collins knowingly created intolerable working conditions. (*Id.* at ¶¶ 25–27). Although aware of the "harm, humiliation and disgrace" Appellees Andre and Collins had inflicted upon Appellant, P & G "adopted what their agents did" and "did nothing to remedy the situation." (*Id.* at ¶¶ 28, 34). These working conditions were "so intolerable" that Appellant "could not continue his employment" and resigned in March 1999. (*Id.* at ¶¶ 5, 33).

¶ 3 Appellant, represented by counsel, filed writs of summons against Appellees Andre, Collins and P & G on December 13, 2000. On August 23, 2002, Appellant filed a *pro se* complaint on behalf of himself and his wife alleging constructive discharge. Appellees filed preliminary objections to the complaint. Following oral argument, the Honorable Brendan J. Vanston, President Judge, issued an order overruling the objections in part and sustaining them in part: he dismissed Appellant's wife's cause of action and directed Appellant to file an amended complaint averring with specificity the facts giving rise to Appellant's claims. On April 2, 2003, Appellant filed his amended complaint asserting counts of civil conspiracy and constructive discharge. Appellees filed their preliminary objections in the nature of a demurrer on April 30, 2003. Following oral argument held on July 8, 2003, Judge Vanston sustained Appellees' preliminary objections and dismissed Appellant's amended complaint. This timely appeal followed.

¶ 4 Initially, we note that Appellant's brief violates numerous rules of appellate procedure. While we are willing to liberally construe materials filed by a *pro se* appellant, our review is hampered herein

---

1. We take these facts from Appellant's amended complaint pursuant to our standard of review, set forth herein on page 440.

2. As Appellant did not number the pages in his brief, we have supplied numbers for ease of reference.

by Appellant's failure to include a statement of jurisdiction, a statement of the scope and standard of review, a statement of questions involved, a statement of the case, a summary of the argument, a separate argument section, and a short conclusion stating the precise relief sought. *See* Pa.R.A.P. 2111(a), 2114, 2116(a), 2117, 2118 and 2119(a). In fact, a review of the record reveals that Appellant's brief is merely a repetition of his complaint with occasional citation to a case, often incorrect, at the end of a numbered paragraph. Notwithstanding these glaring errors, we have carefully reviewed Appellant's brief and have gleaned the following issues therefrom: [3]

> I. Whether the trial court erred in dismissing Appellant's claim of civil conspiracy on the grounds that the complaint failed to state a cause of action.
>
> II. Whether the trial court erred in dismissing Appellant's claim of constructive discharge on the grounds that the complaint failed to state a cause of action.

(Appellant's Brief at 1, 9).

■■■ ¶ 5 When reviewing the appropriateness of a trial court's ruling on preliminary objections, we note:

> "Preliminary objections in the nature of a demurrer test the legal sufficiency of the plaintiff's complaint." *Sexton v. PNC Bank,* 792 A.2d 602, 604 (Pa.Super.2002). "The question presented by the demurrer is whether, on the facts averred, the law says with certainty that no recovery is possible." *Mistick Inc. v. Northwestern Nat'l Cas. Co.,* 806 A.2d 39, 42 (Pa.Super.2002) (citation omitted).

Thus, our scope of review is plenary and our standard of review mirrors that of the trial court. *See id.* Accepting all material averments as true, we must determine "whether the complaint adequately states a claim for relief under any theory of law." *Id.* (citation omitted).

*Homziak v. General Electric Capital Warranty Corp.,* 839 A.2d 1076, 1079 (Pa.Super.2003), *appeal denied,* —— Pa. ——, 860 A.2d 490 (2004). Surmise and conjecture can play no part in our decision. *In re Estate of Luongo,* 823 A.2d 942, 961 (Pa.Super.2003), *appeal denied,* 577 Pa. 722, 847 A.2d 1287 (2003) (citing *Schuylkill Navy v. Langbord,* 728 A.2d 964, 968 (Pa.Super.1999)).

¶ 6 In the case before us, Appellant has alleged claims of civil conspiracy and constructive discharge in his amended complaint. We address each claim separately.

■■■ ¶ 7 In order for a claim of civil conspiracy to proceed, a plaintiff must "allege the existence of all elements necessary to such a cause of action." *Rutherfoord v. Presbyterian–University Hospital,* 417 Pa.Super. 316, 612 A.2d 500, 508 (1992) (citation omitted).

> The Pennsylvania Supreme Court set forth the elements of civil conspiracy in *Thompson Coal Co. v. Pike Coal Co.,* 488 Pa. 198, 211, 412 A.2d 466, 472 (1979): "It must be shown that two or more persons combined or agreed with intent to do an unlawful act or to do an otherwise lawful act by unlawful means." Proof of malice, *i.e.,* an intent to injure, is an essential part of a conspiracy cause of action; this unlawful intent must also

---

**3.** This Court may quash or dismiss an appeal where the appellant fails to adhere to the requirements set forth in the Pennsylvania Rules of Appellate Procedure. Pa.R.A.P. 2101. In the case *sub judice,* we will address only those arguments we can reasonably discern from Appellant's substantively defective brief. *See Kring v. University of Pittsburgh,* 829 A.2d 673, 675 (Pa.Super.2003).

be without justification. [*Id.*]. Furthermore, a conspiracy is not actionable until "some overt act is done in pursuance of the common purpose or design ... and actual legal damage results."

*Id.* (quotation omitted). In addition, "[a] single entity cannot conspire with itself and, similarly, agents of a single entity cannot conspire among themselves." *Id.*

¶ 8 Here, the trial court found that Appellant's amended complaint did not plead facts sufficient to state a claim of civil conspiracy. (*See* Trial Court Opinion filed August 26, 2003, at 2). Indeed, Appellant merely alleges in the most general terms that agents of P & G conspired to intentionally harm Appellant for no reason. (Amended Complaint at ¶¶ 30–31). The amended complaint is totally devoid of any averments specifying either an unlawful act or a lawful act carried out by unlawful means. *See Rutherfoord, supra.* Moreover, as agents of P & G, Andre and Collins cannot "conspire" among themselves. *See id.* Therefore, following our independent review of the entire record, we conclude that the trial court properly dismissed Appellant's count of civil conspiracy for failure to state a cause of action.

¶ 9 Appellant's second issue appears to be a contention that the trial court erred in not allowing his constructive discharge claim to proceed to trial. The trial court's reasoning for sustaining Appellees' demurrer was that the facts alleged in Appellant's amended complaint failed to rebut the presumption of "at-will" employment[4] and failed to assert any violation of public policy which could sustain his cause of action. We agree with the trial court.

¶ 10 To proceed with a claim of constructive discharge from an alleged "lifetime" employment contract, Appellant must first overcome the presumption that his employment was "at will". We recently explained that a party contending that his employment was not "at will" " 'must establish one of the following: (1) an agreement for a definite duration; (2) an agreement specifying that the employee will be discharged for just cause only; (3) sufficient additional consideration; or (4) an applicable recognized public policy exception.'" *Janis v. AMP, Inc.*, 856 A.2d 140, 144 (Pa.Super.2004) (quoting *Rapagnani v. The Judas Company*, 736 A.2d 666, 669 (Pa.Super.1999)). " 'The party claiming that an agreement is for a definite period has the burden of proving that fact ... by providing clear proof that the parties contracted for a specific duration.'" *Gruenwald v. Advanced Computer Applications, Inc.*, 730 A.2d 1004, 1010 (Pa.Super.1999) (quoting *Greene v. Oliver Realty, Inc.*, 363 Pa.Super. 534, 526 A.2d 1192, 1196 (1987)). "A promise of 'permanent' or 'lifetime' employment is generally insufficient to rebut the presumption of at will employment." *Id.* "A clear and definite intention to overcome the presumption must be expressed in the contract." *Rutherfoord, supra* at 503. Thus, an employee handbook does not overcome the "at-will" presumption unless the handbook's language clearly expresses the employer's intent to do so. *Id.*

¶ 11 In the case *sub judice*, Appellant's amended complaint contains bald allegations of a "lifetime" employment contract. In support of his claim, Appellant merely refers to an attached copy of P &

---

4. This concept means that in Pennsylvania "the employee may leave the job for any or no reason or the employer may terminate the employee for any cause or no cause." *Greene v. Oliver Realty, Inc.*, 363 Pa.Super. 534, 526 A.2d 1192, 1196 (1987) (citing *Darlington v. General Electric*, 350 Pa.Super. 183, 504 A.2d 306, 309 (1986)).

G's employee handbook, as well as to unspecified verbal communications and performance reviews. (*See* Amended Complaint ¶¶ 7, 11 and Employee Handbook Exhibit; R.R. at 5–19). As the trial court correctly determined, however, these general allegations are insufficient to permit Appellant to proceed on a claim of constructive discharge. Appellant utterly fails to allege any evidence of a specific agreement or any violation of public policy in support of his claim. Moreover, the handbook upon which Appellant relies specifically states "[P & G] is an employment at will employer." (*Id.*, Employee Handbook Exhibit at 5; R.R. at 9). As a result, we conclude that the trial court properly sustained Appellees' demurrer to the second count of Appellant's amended complaint.

¶ 12 Based upon the reasoning set forth above, we have determined that the trial court properly sustained Appellees' preliminary objections in the nature of a demurrer and thus properly dismissed Appellant's amended complaint. As a result, we affirm the trial court's order entered July 9, 2003.

¶ 13 Order affirmed.