J-A05015-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| REBECCA CRAWLY AND HENRY PERKINS, CO-ADMINISTRATORS OF THE ESTATE OF JULIA MAY DIZZLEY, DECEASED | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellees | |
| v. | |
| CARE PAVILION OF WALNUT PARK | |
| Appellant | No. 1442 EDA 2014 |

Appeal from the Order Entered April 11, 2014
In the Court of Common Pleas of Philadelphia County
Civil Division at No(s): April Term, 2006 No. 0229

BEFORE: GANTMAN, P.J., SHOGAN, J., and ALLEN, J.

MEMORANDUM BY GANTMAN, P.J.:             **FILED MARCH 17, 2015**

Appellant, Care Pavilion of Walnut Park, appeals from the order entered in the Philadelphia County Court of Common Pleas (after remand from our Supreme Court), which granted a new trial in favor of Appellees, Rebecca Crawly and Henry Perkins, Co-Administrators of the Estate of Julia May Dizzley, Deceased. We affirm.

The relevant facts and procedural history of this appeal are as follows.

> Suit in this matter was filed…following the death of Julia May Dizzley, the sister of [Appellees] who are the administrators of the decedent's estate. The decedent had entered [Appellant's] facility in January of 2003 because her various mental and physical problems required nursing home care.[2] In April of 2004, the decedent suffered a fall causing traumatic damage to her eye, and [she] was hospitalized for a necessary surgical repair. During the procedure, she suffered cardiac arrest and anoxic

> encephalopathy rendering her comatose. After transfer to a…hospital for treatment of a medical condition, she died without regaining consciousness in August of 2004.
>
> [2] The decedent, a schizophrenic, suffered from congestive heart failure, chronic lung obstruction, degenerative joint disease, and hypertension.

*Crawley v. Care Pavilion, Inc.*, No. 2464 EDA 2008, unpublished memorandum at 1-2 (Pa.Super. filed July 2, 2009).

On April 4, 2006, Appellees commenced a civil action against Appellant by filing a complaint. Appellees' complaint included counts for negligence, corporate negligence, wrongful death, and a survival action. Appellees argued Appellant "failed, refused and/or neglected to perform the duties to provide reasonable and adequate healthcare to and for [the] decedent…." (Complaint, filed 4/4/06, at 4). Appellees noted Appellant's "failure to hire a sufficient number of trained and competent staff," the "failure to take preventative measures including, but not limited to, adequate supervision and implementation of safety procedures," and the "failure to properly train employees to deal with nursing home residents who are unable to care for themselves…." (*Id.* at 5). Appellees subsequently filed several amended complaints, refining the corporate negligence claim.

Prior to trial, the parties litigated numerous motions concerning the admissibility of evidence. Appellant's filings included a motion *in limine*, seeking to preclude Appellees from introducing evidence of "care and/or conditions which are unrelated to the care provided to [Appellees']

decedent." (Motion, filed 4/9/08, at 1). In it, Appellant asserted that Appellees sought to present Appellant's "disgruntled" former employees to provide irrelevant testimony "pertaining to their views of care provided to other residents, [and] general conditions" at Appellant's facility. (*Id.* at 2). The court considered the parties' pretrial motions at a May 12, 2008 hearing. Regarding Appellant's motion *in limine*, the court announced:

> As I see this case, this is a negligence case. It's a negligence case in which the injury is sustained as a result of a fall. And it's a case in which [Appellees allege] that the fall was either caused by or that there was failure to prevent it due to a lack of due care by [Appellant]. All right.
>
> I, therefore, rule that the only relevant evidence in this case, since it is—the fall is the subject matter of it, all right. The only evidence relevant to it is evidence which can be shown to establish negligence, which is a substantial factor in bringing about the harm. All right.
>
> And I am, therefore, ruling that the only evidence that can come in on this case is evidence concerning the failure to prevent the fall or violations of any standards concerning safety or falls, okay?

(N.T. Pretrial Hearing, 5/12/08, at 15-16).

The court's announcement prompted the following discussion of Appellees' corporate negligence claim:

> [APPELLEE'S COUNSEL]: But it's also a corporate negligence case.
>
> THE COURT: Well, I disagree with you. I don't think it is a corporate negligence case.

> \* \* \*

[APPELLEE'S COUNSEL]: Well, under **Thompson**[ **v. Nason Hosp.**, 527 Pa. 330, 591 A.2d 703 (1991)], you can bring an action against the defendant corporation for certain non-delegable duties that [include]…policies and procedure [and] whether they're adopted.

\*     \*     \*

And so…in this case there are complaints predating [the decedent's accident] that the state gave notice and required [Appellant] to fix [certain things], taking people to the bathrooms, so they don't fall. We're arguing that that notice and in addition, the conditions of failure to provide nursing care, which [the decedent] needed in order not to fall, toileting which she needed taking her to the bathroom every two hours, … were, in fact, the cause of her injuries, not that she just got up and fell down.

(**Id.** at 16-18). The court continued to disagree with Appellees' counsel:

Again, I'm ruling it is not a corporate negligence case. I know of no cases extending this doctrine to nursing homes under…circumstances that are essentially custodial care. I'm ruling that it's a negligence case and I'm ruling that the only relevant evidence that can come in has to do with negligence in the care of [the decedent] or people similarly situated.

(**Id.** at 22).

Following trial, a jury returned a verdict in favor of Appellant. Although the jury found Appellant was negligent in its care of the decedent, the jury determined that Appellant's negligence was not a factual cause of the injury. This Court affirmed the judgment in favor of Appellant on July 2, 2009, and Appellees timely filed a petition for allowance of appeal. On April 17, 2013, our Supreme Court disposed of the matter as follows:

**AND NOW**, this 17th day of April, 2013, the Petition for Allowance of Appeal is **GRANTED**, the Order of the

> Superior Court is **VACATED**, and the case is REMANDED to the court of common pleas for reconsideration in light of ***Scampone v. Highland Park Care Ctr., LLC***, [618 Pa. 363, 57 A.3d 582 (2012)].

(*Per Curiam* Order, entered 4/17/13, at 1).[1]

Upon remand, the court ordered the parties to submit briefs addressing the applicability of ***Scampone***.[2] Appellant filed a brief on March 7, 2014. On March 10, 2014, Appellees filed a brief and motion for a new trial, contending the original trial court's rulings were inconsistent with ***Scampone***, because the court "precluded the introduction of evidence of systemic failures of [Appellant], including, but not limited to, chronic understaffing…." (Motion for New Trial, filed 3/10/14, at 8). Appellees argued that understaffing, under-budgeting, and the failure of Appellant's employees to supervise the nursing home patients demonstrated a pattern of corporate negligence. On April 11, 2014, the court granted Appellees' motion for a new trial.

Appellant timely filed a notice of appeal on May 7, 2014. That same day, the court ordered Appellant to file a concise statement of errors

---

[1] Our Supreme Court decided ***Scampone*** on November 21, 2012. In ***Scampone***, the Court held "a nursing home and affiliated entities are subject to potential direct liability for negligence, where the requisite resident-entity relationship exists to establish that the entity owes the resident a duty of care…." ***Scampone, supra*** at 366, 57 A.3d at 584.

[2] The original trial judge died while the case was pending on appeal, and the court assigned the case to a different jurist upon remand.

complained of on appeal, pursuant to Pa.R.A.P. 1925(b). Appellant timely filed a Rule 1925(b) statement on May 28, 2014.

Appellant raises two issues for our review:

> WHETHER THE REVIEWING COURT ERRED IN GRANTING [APPELLEES'] MOTION FOR A NEW TRIAL ON RECONSIDERATION BASED ON ITS FINDING THAT THE ORIGINAL TRIAL COURT ACTED INCONSISTENTLY WITH *SCAMPONE*…AND MISHANDLED [APPELLEES'] CLAIM ENTITLED "CORPORATE NEGLIGENCE," EVEN THOUGH THE ORIGINAL TRIAL COURT ACTED CONSISTENTLY WITH *SCAMPONE* BY ALLOWING [APPELLEES] TO PURSUE (AND THE JURY TO CONSIDER) A DIRECT NEGLIGENCE CLAIM AGAINST [APPELLANT] BASED ON THE DUTY OF CARE THAT [APPELLANT] OWED TO [APPELLEES'] DECEDENT….
>
> WHETHER THE REVIEWING COURT ERRED IN GRANTING [APPELLEES'] MOTION FOR A NEW TRIAL ON RECONSIDERATION BASED ON ITS FINDING THAT ANY ALLEGED ERRORS MADE BY THE ORIGINAL TRIAL COURT WITH RESPECT TO [APPELLEES'] CLAIM ENTITLED "CORPORATE NEGLIGENCE" WERE NOT HARMLESS, BUT INSTEAD WERE PREJUDICIAL AND CONSTITUTED GROUNDS FOR A NEW TRIAL.

(Appellant's Brief at 4).

We review an order granting a new trial subject to the following principles:

> Each review of a challenge to a new trial order must begin with an analysis of the underlying conduct or omission by the trial court that formed the basis for the motion. There is a two-step process that a trial court must follow when responding to a request for new trial. First, the trial court must decide whether one or more mistakes occurred at trial. These mistakes might involve factual, legal, or discretionary matters. Second, if the trial court concludes that a mistake (or mistakes) occurred, it must determine whether the mistake was a sufficient basis for granting a new trial. The harmless error doctrine underlies every

- 6 -

decision to grant or deny a new trial. A new trial is not warranted merely because some irregularity occurred during the trial or another trial judge would have ruled differently; the moving party must demonstrate to the trial court that [the moving party] has suffered prejudice from the mistake.

To review the two-step process of the trial court for granting or denying a new trial, the appellate court must also undertake a dual-pronged analysis. A review of a denial of a new trial requires the same analysis as a review of a grant. First, the appellate court must examine the decision of the trial court that a mistake occurred.

\* \* \*

If the mistake involved a discretionary act, the appellate court will review for an abuse of discretion. If the mistake concerned an error of law, the court will scrutinize for legal error.

\* \* \*

If the appellate court agrees with the determination of the trial court that a mistake occurred, it proceeds to the second level of analysis. The appellate court must then determine whether the trial court abused its discretion in ruling on the request for a new trial. Discretion must be exercised on the foundation of reason. An abuse of discretion exists when the trial court has rendered a judgment that is manifestly unreasonable, arbitrary, or capricious, has failed to apply the law, or was motivated by partiality, prejudice, bias, or ill will. A finding by an appellate court that it would have reached a different result than the trial court does not constitute a finding of an abuse of discretion. Where the record adequately supports the trial court's reasons and factual basis, the court did not abuse its discretion.

*Ferguson v. Morton*, 84 A.3d 715, 719-20 (Pa.Super. 2013), *appeal denied*, ___ Pa. ___, 97 A.3d 745 (2014) (internal citations and quotation

marks omitted) (quoting **Harman ex rel. Harman v. Borah**, 562 Pa. 455, 467-69, 756 A.2d 1116, 1122-23 (2000)).

On appeal, Appellant acknowledges the original trial court did not have the benefit of the **Scampone** decision at the time of trial. Appellant contends, however, the original trial essentially complied with **Scampone**, which "espoused a traditional theory of direct negligence." (Appellant's Brief at 21). Although the original trial court did not permit the jury to consider Appellee's corporate negligence claim, Appellant maintains the court allowed Appellees to pursue a direct negligence claim, which the jury considered and denied. Appellant asserts the court on remand improperly focused on the "title" of the excluded corporate negligence claim rather than the "substance" of the direct negligence claim Appellees actually advanced at trial. Appellant claims the court "ignored the fact that the original trial court allowed a direct negligence claim against [Appellant] based on the duty of care that [Appellant] owed to [the decedent]." (**Id.** at 24).

Even if the original trial court somehow erred, Appellant insists any errors were harmless. Appellant argues Appellees' corporate negligence claim was duplicative of the direct negligence claim advanced at trial. Appellant further argues that the jury specifically found Appellant's negligence was not the cause of Appellees' injuries; thus, allowing the jury to consider Appellees' corporate negligence claim could not have affected the verdict on causation. Additionally, Appellant submits the court admitted all

evidence relevant to the issue of the decedent's fall, and the claim for corporate negligence would not have resulted in additional evidence for the jury's consideration. Appellant concludes the court erred in granting Appellees' motion for a new trial. We disagree.

"In trying to recover for an action in negligence, a party must prove four elements." *Lux v. Gerald E. Ort Trucking, Inc.*, 887 A.2d 1281, 1286 (Pa.Super. 2005), *appeal denied*, 587 Pa. 731, 901 A.2d 499 (2006).

> They are:
>
> 1. A duty or obligation recognized by law.
>
> 2. A breach of the duty.
>
> 3. Causal connection between the actor's breach of the duty and the resulting injury.
>
> 4. Actual loss or damage suffered by complainant.

*Id.* (internal citation omitted).

"The plaintiff proves the duty and breach elements by showing that the defendant's act or omission fell below the standard of care and, therefore, increased the risk of harm to the plaintiff." *Scampone, supra* at 387, 57 A.3d at 596. "The question of duty in tort is 'a legal determination, assigned in the first instance to the trial court….'" *Thierfelder v. Wolfert*, 617 Pa. 295, 317, 52 A.3d 1251, 1264 (2012) (quoting *Sharpe v. St. Luke's Hosp.*, 573 Pa. 90, 96, 821 A.2d 1215, 1219 (2003)). "[E]ven when it is established that the defendant breached some duty of care owed the plaintiff, it is incumbent on a plaintiff to establish a causal connection

between defendant's conduct, and it must be shown to have been the proximate cause of plaintiff's injury." *Lux, supra* at 1286 (quoting *Taylor v. Jackson*, 643 A.2d 771, 775 (Pa.Cmwlth. 1994)).

"To prove negligence, a plaintiff may proceed against a defendant on theories of direct and vicarious liability, asserted either concomitantly or alternatively." *Sokolsky v. Eidelman*, 93 A.3d 858, 864 (Pa.Super. 2014) (quoting *Scampone, supra* at 388, 57 A.3d at 597).

> Liability for negligent injury is direct when the plaintiff seeks to hold the defendant responsible for harm the defendant caused by the breach of duty owing directly to the plaintiff. By comparison, vicarious liability is a policy-based allocation of risk. Vicarious liability, sometimes referred to as imputed negligence, means in its simplest form that, by reason of some relation existing between A and B, the negligence of A is to be charged against B although B has played no part in it, has done nothing whatever to aid or encourage it, or indeed has done all that [it] possibly can to prevent it. Once the requisite relationship (*i.e.*, employment, agency) is demonstrated, the innocent victim has recourse against the principal, even if the ultimately responsible agent is unavailable or lacks the availability to pay.

*Sokolsky, supra* at 864 (quoting *Scampone, supra* at 388-89, 57 A.3d at 597 (internal citations and quotation marks omitted)).

> Where a corporation is concerned, the ready distinction between direct and vicarious liability is somewhat obscured because we accept the general premise that the corporation acts through its officers, employees, and other agents. The corporation, as principal, assumes the risk of individual agents' negligence under the theory of vicarious liability. In this scenario, the corporation's liability is derivative of the agents' breach of their duties of care to the plaintiff. **But, this Court has also recognized that a corporation may also owe duties of care directly to**

- 10 -

> **a plaintiff, separate from those of its individual agents, such as duties to maintain safe facilities, and to hire and oversee competent staff.** *See, e.g., Thompson, supra* (corporate hospital owed patient non-delegable duty of care to enforce consultation and patient monitoring policies); *Gilbert v. Korvette, Inc.*, 457 Pa. 602, 327 A.2d 94, 102 (1974) (corporation owed customer non-delegable duty of care to maintain premises); *Dempsey v. Walso Bureau, Inc.*, 431 Pa. 562, 246 A.2d 418 (1968) (corporation owed employee duty of reasonable care in hiring other employees); *accord Atcovitz v. Gulph Mills Tennis Club, Inc.*, 571 Pa. 580, 812 A.2d 1218 (2002) (if duty exists, corporation may be held directly liable for negligence). Accordingly, as a general proposition, the recognition that a corporation acts through its agents has not been held to be a fatal impediment to haling a corporation into court on direct liability tort claims.

*Scampone, supra* at 389-390, 57 A.3d at 597-98 (some internal citations omitted) (emphasis added).

Based upon the foregoing, our Supreme Court held "a nursing home and affiliated entities are subject to potential direct liability for negligence, where the requisite resident-entity relationship exists to establish that the entity owes the resident a duty of care…." *Id.* at 366, 57 A.3d at 584. To determine the existence of such a duty, a court must consider several factors: "(1) the relationship between the parties; (2) the social utility of the actor's conduct; (3) the nature of the risk imposed and foreseeability of the harm incurred; (4) the consequences of imposing a duty upon the actor; and (5) the overall public interest in the proposed solution." *Id.* at 393, 57 A.3d at 600 (quoting *Althaus v. Cohen*, 562 Pa. 547, 553, 756 A.2d 1166, 1169 (2000)). *See also Sokolsky, supra* at 870 (concluding *Scampone*

- 11 -

requires court to analyze **Althaus** factors to extend corporate liability to skilled nursing facility).

Instantly, Appellant concedes the original trial court did not allow Appellees to advance a corporate negligence claim. (**See** Appellant's Brief at 13.) Our review of the record confirms Appellant's concession, as the original trial court issued the following jury instruction regarding negligence:

> Negligent conduct may consist either of an act or a failure to act whether there is a duty to do so. In other words, negligence is the failure to do something that a reasonably careful person would do or doing something that a reasonably careful person would not do.
>
> In light of all of the surrounding circumstances established by the evidence in this case, it is for you to determine how a reasonable careful person would act in these circumstances.
>
> Ordinary care is the care a reasonable, careful person would use under the circumstances present in this case. It is the duty of every person to use ordinary care not only for his or her own safety and protection of his or her property, but also to avoid injury to others. What constitutes ordinary care varies according to the particular circumstances and conditions existing then and there. The amount of care required by the law must be in keeping with the degree of danger involved.
>
> Now, ladies and gentlemen, I've used the word person in the definition of negligence and ordinary care. [Appellant], of course, is a corporation. And a corporation under the law is to be treated equally and fairly as if it were a person, but a corporation…cannot do anything itself. A corporation acts by people, agents, servants or employees, people who are working for that corporation. Any act or omission of an employee, officer or agent of [Appellant] performed within the scope of that person's employment or agency is chargeable to the corporation.

Now, [Appellees] must prove to you that [Appellant's] conduct caused [Appellees'] damages. This is referred to as factual cause and the question is, was [Appellant's] negligent conduct a factual cause in bringing about [Appellees'] injury.

(*See* N.T. Trial, 5/19/08, 196-98.)

Despite Appellant's insistence that the original trial court effectively complied with *Scampone*, *Scampone* recognized a corporation might owe additional duties of care to a plaintiff, separate from those of its individual agents. *Scampone, supra* at 389, 57 A.3d at 598. *Scampone* specifically mentioned the possibility of corporate duties "to maintain safe facilities, and to hire and oversee competent staff." *Id.* Here, the original trial court precluded Appellees from raising similar claims of corporate negligence. The original trial court also failed to analyze the *Althaus* factors, which *Scampone* mandated. *See Sokolsky, supra*. Consequently, we disagree with Appellant's assertion that the original trial court acted consistently with *Scampone*.

Upon remand, the court evaluated the trial record in light of *Scampone* and correctly determined the original trial court's failure to analyze the *Althaus* factors amounted to an error of law. Thereafter, the court conducted its own analysis of the *Althaus* factors and concluded as follows:

Upon weighing the *Althaus* factors as applied to this case, this court finds the imposition of a duty is warranted. Appellant's work is of great social utility, and the imposition of a duty could come at increased cost.

- 13 -

> However, the relationship of the parties, the public interest, and the foreseeability or risk of harm tips the scale in favor of Appellees. This court finds the imposition of a duty to ensure quality skilled nursing care to be in the interests of morals, justice, and society.

(**See** Trial Court Opinion, dated August 12, 2014, at 11) (internal citation omitted).

Moreover, the court found the original trial court's errors were not harmless:

> Appellees have shown no charge was given on corporate negligence. In fact, the charge quoted by Appellees closely tracks the suggested charge found in § 6.30 of the Pennsylvania Suggested Standard Civil Jury Instructions which falls under the chapter of Agency with vicarious liability. The Opinion of the original trial court clarifies its approach, "All the defendant actors were either [Appellant's] employees or agents whose conduct exposed the corporation to vicarious liability, and so the jury was told."
>
> As the **Scampone** Court made clear, the fact that a corporation acts through its agents is **not** "a fatal impediment to haling a corporation into court on direct liability tort claims." The **Scampone** Court further noted that vicarious and direct negligence theories are distinct policies, which serve complimentary purposes. As the record indicates, only vicarious liability was charged to the jury. Appellant's argument that the verdict would be the same is without merit because the jury was precluded from considering the claim. Appellant would have this [c]ourt believe a charge and verdict on vicarious liability would be the same as a charge and verdict on direct liability. However, as the **Scampone** Court clarified, both of these theories are distinct. Appellees have been prejudiced by the preclusion of their corporate negligence claim.
>
> Furthermore, Appellees have shown that the original trial court precluded evidence, which prevented the jury from properly hearing a corporate negligence claim.

- 14 -

* * *

> Notwithstanding the original trial court's errors in preclusion of a corporate negligence claim warranting a new trial, this court finds the charge of only vicarious liability and preclusion of evidence regarding corporate negligence were errors of law, which prejudiced Appellees and warranted a new trial.

(***Id.*** at 12-13) (emphasis in original) (internal citations omitted). In light of the applicable scope and standard of review and the relevant case law, the court properly granted Appellees' motion for a new trial. ***See Scampone, supra***; ***Ferguson, supra***. Accordingly, we affirm.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/17/2015